# Exhibit A

Notices of Intent to Sue

February 10, 2026

**VIA EMAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

James Macy
Regional Administrator
Environmental Protection Agency, Region 7
11201 Renner Blvd.
Lenexa, KS 66219

Lee Zeldin
Administrator
Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

**Re: 60-Day Notice of Intent to Sue for Failure to Perform Nondiscretionary Duty under the Clean Water Act**

To Whom It May Concern:

In accordance with section 505 of the Clean Water Act, 33 U.S.C. § 1365, and 40 C.F.R. Part 135, the Iowa Environmental Council ("IEC") and Food & Water Watch ("FWW") (collectively, "Notifying Parties") hereby give notice to the U.S. Environmental Protection Agency ("EPA") of the violations described below relating to EPA's duty to review Iowa's 2024 impaired waters list. If these violations are not remedied within 60 days, the Notifying Parties intend to commence a civil action against EPA seeking abatement of the violations and attorneys' fees and costs, pursuant to section 505 of the Clean Water Act.[1]

## PARTIES GIVING NOTICE

Iowa Environmental Council
505 5th Avenue
Suite 850
Des Moines, IA 50309
(515) 244-1194

[1] 33 U.S.C. § 1365(a)(2) (authorizing citizen suits against EPA "where there is an alleged failure of the Administrator to perform any act or duty under th[e] Act [] which is not discretionary with the Administrator.").

Food & Water Watch
1616 P Street, NW
Suite 300
Washington, DC 20036
(202) 683-2500

IEC is an alliance of nearly 100 organizations, over 500 individual members, and an at-large board of farmers, business owners, and conservationists. IEC works to build a safe, healthy environment and sustainable future for Iowa. Our members care about air and water quality across the state, and they hike, recreate, and enjoy the outdoors in Iowa and beyond.

FWW is a national, nonprofit membership organization that mobilizes regular people to build political power to move bold and uncompromised solutions to the most pressing food, water, and climate problems of our time. FWW uses grassroots organizing, communications, public education, research, policy analysis, and litigation to protect people's health, communities, and democracy from the growing destructive power of the most powerful economic interests. FWW's Iowa members' recreational and health interests are adversely impacted by nitrate and nitrite pollution in Iowa's waterways.

## LEGAL FRAMEWORK

Congress enacted the Clean Water Act to maintain and, where necessary, restore the integrity of U.S. waters.[2] States like Iowa that are authorized to implement the Clean Water Act must comply with minimum federal standards established by the Act. Ultimately, the law envisions that State and federal regulators will work together to *eliminate* all pollutant discharges to navigable waterways.[3] To help achieve these goals and ensure the preservation of healthy waters for future generations, Congress created water quality standards.

*Water Quality Standards*

Water quality standards are the ruler by which regulators measure the health of the nation's waters. State water quality standards consist of designated uses—such as drinking water source, recreational waters, and habitat for fish and other aquatic species—as well as numeric and narrative criteria deemed necessary to protect those uses.[4] States must adopt water quality standards that "protect the public health or welfare, enhance the quality of water and serve the purposes of [the Clean Water Act]."[5] Water quality standards also "serve as the regulatory basis for the establishment of water-quality-based treatment controls and strategies beyond the technology-based levels of treatment required by the [National Pollutant Discharge Elimination

[2] 33 U.S.C. § 1251.
[3] *Id.* § 1251(a)(1).
[4] *Id.* § 1313(c)(2)(A); 40 C.F.R. §§ 131.2, 131.10-12.
[5] 33 U.S.C. § 1313(c)(2)(A).

System],” the permitting system State and federal regulators use to control pollution from point sources.[6]

*Water Quality-Limited Segments*

Pursuant to Section 303(d) of the Clean Water Act, when monitoring of a particular waterway reveals that existing controls are not stringent enough to attain an applicable water quality standard, States must identify that water on what is commonly referred to as a “303(d) List.”[7] Waters listed on a State’s 303(d) List are known as “water quality-limited segments.”[8] Essentially, water quality-limited segments are so impaired by pollution that they need additional protections to restore water quality to standards that are protective of designated uses. Total maximum daily loads (“TMDLs”) are the additional protections the Clean Water Act mandates for water quality-limited segments.[9]

When a water quality-limited segment is added to a State’s 303(d) List, the listing triggers the State’s duty to develop a TMDL.[10] When regulators develop a TMDL, they identify the maximum quantity of a pollutant a water can receive while still attaining applicable water quality standards.[11] In this manner, TMDLs provide permitting authorities with information critical to developing NPDES permit effluent limitations stringent enough to ensure cumulative pollutant loads do not exceed the TMDL’s maximum load. TMDLs also provide information about the extent to which non-point sources are contributing to pollutant loads.[12] States must establish a priority ranking to develop a TMDL for each water quality-limited segment on their 303(d) List.[13] Priority rankings are determined based on severity of pollution and designated uses.[14]

*EPA Review*

Federal regulations require States to submit 303(d) Lists to EPA every two years.[15] EPA then has 30 days to approve or disapprove a State’s List.[16] If EPA disapproves the List, it then has another 30 days to identify additional water quality-limited segments, establish loads as

[6] 40 C.F.R. § 131.2.
[7] 33 U.S.C. § 1313(d).
[8] 40 C.F.R. § 130.7(b).
[9] 33 U.S.C. § 1313(d)(1)(C)-(D).
[10] *Id.* § 1313(d)(1).
[11] *Id.* § 1313(d)(1)(C)-(D); 40 C.F.R. § 130.7(c); *see also Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 216 (2011) (“[I]nclusion of a water body on a State’s 303(d) list triggers a statutory obligation to develop total maximum daily loads, or TMDLs, which specify the absolute amount of particular pollutants the entire water body can take on while still satisfying all water quality standards.”).
[12] *See Anacostia Riverkeeper*, 798 F. Supp. 2d at 216 (“TMDLs are central to the Clean Water Act’s water-quality scheme because . . . they tie together point source and non-point source pollution issues in a manner that addresses the whole health of the water.”) (citation omitted).
[13] 33 U.S.C. § 1313(d)(1)(A).
[14] *Id.* § 1313(d)(1)(A).
[15] 40 C.F.R. § 130.7(d)(1); *see also* 33 U.S.C. § 1313(d)(2) (requiring submissions “from time to time”).
[16] 40 C.F.R. § 130.7(d)(2).

necessary to attain applicable water quality standards, and notice the listings and loads for public comment.[17] Once EPA has finalized its additions to a State's 303(d) List, "the State shall incorporate them" into its Clean Water Act implementation plans.[18]

## FACTUAL BACKGROUND

In March of 2024, the Iowa Department of Natural Resources ("IDNR") published a draft 2024 303(d) List for public comment. IDNR's accompanying methodology document explained how it evaluated nitrate for segments classified for Class C, drinking water supply.[19] IDNR's assessment treated nitrate as a conventional pollutant, relying on a binomial calculation method developed by EPA for assessing conventional pollutants with few samples.[20]

EPA reviewed Iowa's draft documents and submitted comments calling for several changes. In particular, EPA noted deficiencies in IDNR's process for evaluating nitrate impairments. IDNR issued a response to comments on May 3, 2024, in which it declined to change its approach. IDNR then submitted the List to EPA for approval.

*EPA Partial Disapproval*

On November 12, 2025, EPA issued a partial disapproval of Iowa's 2024 303(d) List.[21] The disapproval applied to seven river segments with excess nitrogen, each of which had multiple samples exceeding the nitrate as N or nitrate plus nitrite water quality criteria. EPA proposed adding these seven water quality-limited segments to Iowa's 303(d) list. EPA then provided the required public notice seeking comment for a proposed partial disapproval of Iowa's list.[22] EPA received 83 public comments. The vast majority of the comments supported EPA's additions.

On December 30, 2024, EPA designated the seven waters as impaired for nitrate plus nitrite as N, and designated one of the seven (a segment of the Iowa River) as impaired for nitrate as N as well. No party appealed EPA's decision.

*Subsequent Action*

On July 11, 2025, EPA reversed course and rescinded its disapproval of Iowa's 2024 303(d) List via a two-page letter to IDNR ("Rescission Letter"). EPA stated its goal with the

---

[17] 33 U.S.C. § 1313(d)(2); 40 C.F.R. 130.7(d)(2).
[18] 33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. § 130.5 (laying out rules for state continued planning processes under the Clean Water Act).
[19] IDNR, Methodology for Iowa's 2024 Water Quality Assessment, Listing, and Reporting Pursuant to Sections 305(b), 303(d), and 314 of the Federal Clean Water Act 19-20 (Sept. 29, 2023); *see also* Iowa Admin. Code r. 567-61.3(1)(b)(11) (defining Class C waters).
[20] IDNR, Methodology for Iowa's 2024 Water Quality Assessment, Listing, and Reporting Pursuant to Sections 305(b), 303(d), and 314 of the Federal Clean Water Act 19-20 (Sept. 29, 2023).
[21] U.S. EPA, *EPA Takes Action on Iowa's 2024 Impaired Waters List*, https://www.epa.gov/newsreleases/epa-takes-action-iowas-2024-list-impaired-waters (Nov. 13, 2024).
[22] *Id.*

rescission was "to allow EPA to evaluate additional information regarding the state's determination not to list the seven referenced waters pursuant to the requirements of Section 303(d) of the Clean Water Act and EPA regulations."[23] EPA's rationale was brief:

1. IDNR provided information "that was not previously submitted to or considered by the EPA in its prior actions regarding the 2024 Section 303(d) List."

2. IDNR applies "the nitrate, nitrite and nitrate plus nitrite criteria as numeric criteria that solely protect against chronic effects."[24]

In the same letter, EPA stated that it was rescinding its December action "so that it can further evaluate this rationale and reconsider its decision on the state's Section 303(d) List."[25] EPA was also "seeking additional information from IDNR to facilitate its reconsideration."[26]

Sometime after July 11, 2025, IDNR posted the July 11 letter on its website.[27] Neither IDNR nor EPA provided any public notification via email or other method about the change, despite EPA's creation and maintenance of a web page about the December 2024 disapproval.

The Notifying Parties, as well as the Environmental Law and Policy Center, sent a letter to EPA Region 7 on October 9, 2025. The letter requested clarification as to whether the EPA letter dated July 11 was a final agency action. It also explained why Iowa's water quality standards apply on a short-term basis like toxic pollutants, rather than on a chronic basis like conventional pollutants. EPA did not respond to the letter.

## CLAIM

### I. EPA'S CLAIMED REEVALUATION VIOLATES EPA'S MANDATORY DUTY TO APPROVE OR DISAPPROVE IOWA'S 303(d) LIST WITHIN 30 DAYS

EPA has failed to meet the deadline for approving or disapproving Iowa's 2024 303(d) List. Federal regulations require EPA to decide on impairment listings within 30 days: "If the Regional Administrator disapproves such listing and loadings, he shall, not later than 30 days after the date of such disapproval, identify such waters in such State . . . ."[28] In this case, EPA has not issued any official approval or disapproval of Iowa's 2024 303(d) list, claiming it needed to "evaluate additional information" and "further evaluate [IDNR's] rationale and reconsider its decision on the state's Section 303(d) List."[29]

---

[23] Letter from James Macy, U.S. EPA, Region 7, to Ed Tormey, IDNR (July 11, 2025) at 1.
[24] *Id.*
[25] *Id.* at 2.
[26] *Id.*
[27] *2024 305(b) Assessment Summary*, Internet Archive WayBack Machine, https://web.archive.org/web/20250721113854/https://programs.iowadnr.gov/adbnet/Assessments/Summary/2024 (captured July 21, 2025).
[28] 40 C.F.R. § 130.7(d)(2).
[29] Letter from James Macy, U.S. EPA, Region 7, to Ed Tormey, IDNR (July 11, 2025) at 1-2.

After rescinding its original decision on Iowa's 2024 303(d) list on July 11, 2025, EPA took no action in the following 30 days. On October 9, 2025, Notifying Parties asked EPA for an update and clarification, but received no response. EPA has taken no further action. Thus, EPA has unlawfully failed to perform a nondiscretionary duty required by the Clean Water Act.[30]

If EPA does not remedy its unlawful failure to act within 60 days of receiving this letter, Notifying Parties will file a lawsuit seeking declaratory and injunctive relief declaring EPA's inaction unlawful and ordering EPA to issue a final decision on Iowa's 2024 303(d) list, as well as attorneys' fees and costs.

## CONCLUSION

Notifying Parties request that EPA correct the errors identified in the preceding claim by issuing a final decision approving or disapproving Iowa's 2024 303(d) List. As discussed above, if EPA fails to address this violation within 60 days, the Notifying Parties intend to file a citizen suit under Section 505(a)(1) of the Clean Water Act. If EPA has taken any steps to abate the violation described above, or if EPA believes that anything in this letter is inaccurate, please notify the undersigned counsel for Notifying Parties. If EPA does not advise us of any remedial steps or inaccuracies during the 60-day period, we will assume that no such steps have been taken, that the information in this letter is accurate, and that the violation is ongoing. We would be happy to meet with EPA or its representatives to attempt to resolve these issues within the 60-day notice period.

Any correspondence related to this matter should be directed to the following attorneys for the Notifying Parties listed as signatories below.

Sincerely,

/s/ Dani Replogle

Dani Replogle
Staff Attorney
Food & Water Watch
1616 P Street, NW
Suite 300
Washington, DC 20036
(202) 683-4947
dreplogle@fwwatch.org

/s/ Michael Schmidt

Michael Schmidt
General Counsel
Iowa Environmental Council
505 5th Ave
Suite 850
Des Moines, IA 50309
(515) 244-1194 x212
schmidt@iaenvironment.org

[30] 33 U.S.C. § 1365(a)(2)

cc (via email and certified mail, return receipt requested):

Director Kayla Lyon
Iowa Department of Natural Resources
6200 Park Avenue, Suite 200
Des Moines, IA 50321

U.S. Attorney General Pamela Bondi
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

March 10, 2026

**VIA EMAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

James Macy
Regional Administrator
Environmental Protection Agency, Region 7
11201 Renner Blvd.
Lenexa, KS 66219

Lee Zeldin
Administrator
Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

**Re: 60-Day Notice of Intent to Sue for Failure to Perform Nondiscretionary Duty under the Clean Water Act**

To Whom It May Concern:

In accordance with section 505 of the Clean Water Act, 33 U.S.C. § 1365, and 40 C.F.R. Part 135, the Environmental Law and Policy Center ("ELPC" or "Notifying Party") hereby gives notice to the U.S. Environmental Protection Agency ("EPA") of the violations described below relating to EPA's duty to review Iowa's 2024 impaired waters list. If these violations are not remedied within 60 days, the Notifying Party intends to commence a civil action against EPA seeking abatement of the violations and attorneys' fees and costs, pursuant to section 505 of the Clean Water Act.[1]

**PARTY GIVING NOTICE**

Environmental Law and Policy Center
505 5th Avenue
Suite 333
Des Moines, IA 50309
(312) 673-6500

ELPC is the Midwest's leading public interest environmental legal advocacy organization. We develop and lead successful strategic environmental advocacy campaigns to protect our natural resources and improve environmental quality. We protect the Midwest's wild and natural places,

---

[1] 33 U.S.C. § 1365(a)(2) (authorizing citizen suits against EPA "where there is an alleged failure of the Administrator to perform any act or duty under th[e] Act [] which is not discretionary with the Administrator.").

and we fight for safe, clean water and healthy clean air for all. Our multi-disciplinary staff employs a teamwork approach using legal, economic analysis, public policy advocacy and research, and communications tools to produce successes that improve both our environment and our economy.

## LEGAL FRAMEWORK

Congress enacted the Clean Water Act to maintain and, where necessary, restore the integrity of U.S. waters.[2] States like Iowa that are authorized to implement the Clean Water Act must comply with minimum federal standards established by the Act. Ultimately, the law envisions that State and federal regulators will work together to *eliminate* all pollutant discharges to navigable waterways.[3] To help achieve these goals and ensure the preservation of healthy waters for future generations, Congress created water quality standards.

### *Water Quality Standards*

Water quality standards are the ruler by which regulators measure the health of the nation's waters. State water quality standards consist of designated uses—such as drinking water source, recreational waters, and habitat for fish and other aquatic species—as well as numeric and narrative criteria deemed necessary to protect those uses.[4] States must adopt water quality standards that "protect the public health or welfare, enhance the quality of water and serve the purposes of [the Clean Water Act]."[5] Water quality standards also "serve as the regulatory basis for the establishment of water-quality-based treatment controls and strategies beyond the technology-based levels of treatment required by the [National Pollutant Discharge Elimination System]," the permitting system State and federal regulators use to control pollution from point sources.[6]

### *Water Quality-Limited Segments*

Pursuant to Section 303(d) of the Clean Water Act, when monitoring of a particular waterway reveals that existing controls are not stringent enough to attain an applicable water quality standard, States must identify that water on what is commonly referred to as a "303(d) List."[7] Waters listed on a State's 303(d) List are known as "water quality-limited segments."[8] Essentially, water quality-limited segments are so impaired by pollution that they need additional protections to restore water quality to standards that are protective of designated uses. Total

---

[2] 33 U.S.C. § 1251.

[3] *Id.* § 1251(a)(1).

[4] *Id.* § 1313(c)(2)(A); 40 C.F.R. §§ 131.2, 131.10-12.

[5] 33 U.S.C. § 1313(c)(2)(A).

[6] 40 C.F.R. § 131.2.

[7] 33 U.S.C. § 1313(d).

[8] 40 C.F.R. § 130.7(b).

maximum daily loads ("TMDLs") are the additional protections the Clean Water Act mandates for water quality-limited segments.[9]

When a water quality-limited segment is added to a State's 303(d) List, the listing triggers the State's duty to develop a TMDL.[10] When regulators develop a TMDL, they identify the maximum quantity of a pollutant a water can receive while still attaining applicable water quality standards.[11] In this manner, TMDLs provide permitting authorities with information critical to developing NPDES permit effluent limitations stringent enough to ensure cumulative pollutant loads do not exceed the TMDL's maximum load. TMDLs also provide information about the extent to which non-point sources are contributing to pollutant loads.[12] States must establish a priority ranking to develop a TMDL for each water quality-limited segment on their 303(d) List.[13] Priority rankings are determined based on severity of pollution and designated uses.[14]

*EPA Review*

Federal regulations require States to submit 303(d) Lists to EPA every two years.[15] EPA then has 30 days to approve or disapprove a State's List.[16] If EPA disapproves the List, it then has another 30 days to identify additional water quality-limited segments, establish loads as necessary to attain applicable water quality standards, and notice the listings and loads for public comment.[17] Once EPA has finalized its additions to a State's 303(d) List, "the State shall incorporate them" into its Clean Water Act implementation plans.[18]

## **FACTUAL BACKGROUND**

In March of 2024, the Iowa Department of Natural Resources ("IDNR") published a draft 2024 303(d) List for public comment. IDNR's accompanying methodology document explained

---

[9] 33 U.S.C. § 1313(d)(1)(C)-(D).

[10] *Id.* § 1313(d)(1).

[11] *Id.* § 1313(d)(1)(C)-(D); 40 C.F.R. § 130.7(c); *see also Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 216 (2011) ("[I]nclusion of a water body on a State's 303(d) list triggers a statutory obligation to develop total maximum daily loads, or TMDLs, which specify the absolute amount of particular pollutants the entire water body can take on while still satisfying all water quality standards.").

[12] *See Anacostia Riverkeeper*, 798 F. Supp. 2d at 216 ("TMDLs are central to the Clean Water Act's water-quality scheme because . . . they tie together point source and non-point source pollution issues in a manner that addresses the whole health of the water.") (citation omitted).

[13] 33 U.S.C. § 1313(d)(1)(A).

[14] *Id.* § 1313(d)(1)(A).

[15] 40 C.F.R. § 130.7(d)(1); *see also* 33 U.S.C. § 1313(d)(2) (requiring submissions "from time to time").

[16] 40 C.F.R. § 130.7(d)(2).

[17] 33 U.S.C. § 1313(d)(2); 40 C.F.R. 130.7(d)(2).

[18] 33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. § 130.5 (laying out rules for state continued planning processes under the Clean Water Act).

how it evaluated nitrate for segments classified for Class C, drinking water supply.[19] IDNR's assessment treated nitrate as a conventional pollutant, relying on a binomial calculation method developed by EPA for assessing conventional pollutants with few samples.[20]

EPA reviewed Iowa's draft documents and submitted comments calling for several changes. In particular, EPA noted deficiencies in IDNR's process for evaluating nitrate impairments. IDNR issued a response to comments on May 3, 2024, in which it declined to change its approach. IDNR then submitted the List to EPA for approval.

*EPA Partial Disapproval*

On November 12, 2025, EPA issued a partial disapproval of Iowa's 2024 303(d) List.[21] The disapproval applied to seven river segments with excess nitrogen, each of which had multiple samples exceeding the nitrate as N or nitrate plus nitrite water quality criteria. EPA proposed adding these seven water quality-limited segments to Iowa's 303(d) list. EPA then provided the required public notice seeking comment for a proposed partial disapproval of Iowa's list.[22] EPA received 83 public comments. The vast majority of the comments supported EPA's additions.

On December 30, 2024, EPA designated the seven waters as impaired for nitrate plus nitrite as N, and designated one of the seven (a segment of the Iowa River) as impaired for nitrate as N as well. No party appealed EPA's decision.

*Subsequent Action*

On July 11, 2025, EPA reversed course and rescinded its disapproval of Iowa's 2024 303(d) List via a two-page letter to IDNR ("Rescission Letter"). EPA stated its goal with the rescission was "to allow EPA to evaluate additional information regarding the state's determination not to list the seven referenced waters pursuant to the requirements of Section 303(d) of the Clean Water Act and EPA regulations."[23] EPA's rationale was brief:

1. IDNR provided information "that was not previously submitted to or considered by the EPA in its prior actions regarding the 2024 Section 303(d) List."

---

[19] IDNR, Methodology for Iowa's 2024 Water Quality Assessment, Listing, and Reporting Pursuant to Sections 305(b), 303(d), and 314 of the Federal Clean Water Act 19-20 (Sept. 29, 2023); *see also* Iowa Admin. Code r. 567-61.3(1)(b)(11) (defining Class C waters).

[20] IDNR, Methodology for Iowa's 2024 Water Quality Assessment, Listing, and Reporting Pursuant to Sections 305(b), 303(d), and 314 of the Federal Clean Water Act 19-20 (Sept. 29, 2023).

[21] U.S. EPA, *EPA Takes Action on Iowa's 2024 Impaired Waters List*, https://www.epa.gov/newsreleases/epa-takes-action-iowas-2024-list-impaired-waters (Nov. 13, 2024).

[22] *Id.*

[23] Letter from James Macy, U.S. EPA, Region 7, to Ed Tormey, IDNR (July 11, 2025) at 1.

2. IDNR applies "the nitrate, nitrite and nitrate plus nitrite criteria as numeric criteria that solely protect against chronic effects."[24]

In the same letter, EPA stated that it was rescinding its December action "so that it can further evaluate this rationale and reconsider its decision on the state's Section 303(d) List."[25] EPA was also "seeking additional information from IDNR to facilitate its reconsideration."[26]

Sometime after July 11, 2025, IDNR posted the July 11 letter on its website.[27] Neither IDNR nor EPA provided any public notification via email or other method about the change, despite EPA's creation and maintenance of a web page about the December 2024 disapproval.

The Notifying Party, as well as the Iowa Environmental Council ("IEC") and Food and Water Watch ("FWW"),[28] sent a letter to EPA Region 7 on October 9, 2025. The letter requested clarification as to whether the EPA letter dated July 11 was a final agency action. It also explained why Iowa's water quality standards apply on a short-term basis like toxic pollutants, rather than on a chronic basis like conventional pollutants. EPA did not respond to the letter.

## CLAIM

### I. EPA'S CLAIMED REEVALUATION VIOLATES EPA'S MANDATORY DUTY TO APPROVE OR DISAPPROVE IOWA'S 303(d) LIST WITHIN 30 DAYS

EPA has failed to meet the deadline for approving or disapproving Iowa's 2024 303(d) List. Federal regulations require EPA to decide on impairment listings within 30 days: "If the Regional Administrator disapproves such listing and loadings, he shall, not later than 30 days after the date of such disapproval, identify such waters in such State . . . ."[29] In this case, EPA has not issued any official approval or disapproval of Iowa's 2024 303(d) list, claiming it needed to "evaluate additional information" and "further evaluate [IDNR's] rationale and reconsider its decision on the state's Section 303(d) List."[30]

After rescinding its original decision on Iowa's 2024 303(d) list on July 11, 2025, EPA took no action in the following 30 days. On October 9, 2025, the Notifying Party, IEC, and FWW asked EPA for an update and clarification, but received no response. EPA has taken no

---

[24] *Id.*

[25] *Id.* at 2.

[26] *Id.*

[27] *2024 305(b) Assessment Summary*, Internet Archive WayBack Machine, https://web.archive.org/web/20250721113854/https://programs.iowadnr.gov/adbnet/Assessments/Summary/2024 (captured July 21, 2025).

[28] The Iowa Environmental Council and Food and Water Watch issued a 60-Day Notice of Intent to Sue on the same claim on February 10, 2026.

[29] 40 C.F.R. § 130.7(d)(2).

[30] Letter from James Macy, U.S. EPA, Region 7, to Ed Tormey, IDNR (July 11, 2025) at 1-2.

further action. Thus, EPA has unlawfully failed to perform a nondiscretionary duty required by the Clean Water Act.[31]

If EPA does not remedy its unlawful failure to act within 60 days of receiving this letter, the Notifying Party will file a lawsuit seeking declaratory and injunctive relief declaring EPA's inaction unlawful and ordering EPA to issue a final decision on Iowa's 2024 303(d) list, as well as attorneys' fees and costs.

## CONCLUSION

Notifying Party requests that EPA correct the errors identified in the preceding claim by issuing a final decision approving or disapproving Iowa's 2024 303(d) List. As discussed above, if EPA fails to address this violation within 60 days, the Notifying Party intends to file a citizen suit under Section 505(a)(1) of the Clean Water Act. If EPA has taken any steps to abate the violation described above, or if EPA believes that anything in this letter is inaccurate, please notify the undersigned counsel for Notifying Party. If EPA does not advise us of any remedial steps or inaccuracies during the 60-day period, we will assume that no such steps have been taken, that the information in this letter is accurate, and that the violation is ongoing. We would be happy to meet with EPA or its representatives to attempt to resolve these issues within the 60-day notice period.

Any correspondence related to this matter should be directed to the following attorneys for the Notifying Party listed as signatory below.

Sincerely,

/s/ Josh Mandelbaum

Josh Mandelbaum
Senior Attorney
Environmental Law and Policy Center
505 5th Ave
Suite 333
Des Moines, IA 50309
(312) 673-6500
(515) 244-0253
jmandelbaum@elpc.org

[31] 33 U.S.C. § 1365(a)(2)

cc (via email and certified mail, return receipt requested):

Director Kayla Lyon
Iowa Department of Natural Resources
6200 Park Avenue, Suite 200
Des Moines, IA 50321

U.S. Attorney General Pamela Bondi
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001